IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANN BRIT JOHANSSON | : | CIVIL ACTION |
| v. | : | NO. 02-CV-4684 |
| CITY OF PHILADELPHIA | : | |

**DEFENDANT'S PRETRIAL MEMORANDUM**

I.   FACTS

On July 13, 2000, approximately 4:40 p.m., P/O Wardie Murden responded to a police radio call directing him to the 6400 block of Glenmore Avenue, Philadelphia, PA, where it was reported that a person was walking across the rooftops. When P/O Murden entered the block he was met by neighbors who described plaintiff has having mental health problems in the past and on that day, while naked, walking and sitting on the row homes' adjoining porch roofs; and, carrying things out of her home and tossing them from the roofs. P/O Murden observed plaintiff walking across the roofs. He does not recall whether or not she was naked. P/O Murden called to plaintiff. She did not respond before going into her home through an open 2nd floor window.

Shortly thereafter and in very quick succession, P/O's Susan Garczynski and Deborah Mattiacci arrived in their police wagon; P/O's Bianca Cole and Howard Lee arrived in their police car; and P/O Michele Casey arrived in her police car. They observed plaintiff walking naked on the roofs and enter her home through a 2nd floor window. Shortly thereafter, Sgt. Gary Ferguson arrived and assumed control of the situation. The police personnel repeatedly knocked on plaintiff's front door and rang her doorbell. They received no response.

Sgt. Ferguson directed P/O's Lee and Murden to enter an open and abandoned home, come out onto the porch roofs and enter plaintiff's home through the open 2nd floor window. Also, he instructed them to do nothing other than enter the house and open the front door. P/O Lee and Murden entered plaintiff's home. Immediately after entering they announced their presence. They received no response. When they passed a bathroom door they observed

plaintiff inside, naked and sitting in the unplugged bathtub with the water running. Plaintiff did not acknowledge their presence. P/O's Lee and Murden went to the front door and found it secured with a lock requiring a key to open it from the inside. P/O Lee left the house via the 2nd floor window and crossed the roofs to a neighbor's home that supplied the P/O with a tool to use to open the front door. P/O's Lee and Murden used the tool to remove the front door lock, opened the door and reported to Sgt. Ferguson. They told Sgt. Ferguson that plaintiff was in the bathroom naked and not responding to their presence. Sgt. Ferguson directed that P/O's Garczynski, Mattiacci and Casey enter the home and attend to plaintiff. P/O Murden joined them; however, he went to a bedroom and attempted to find some identification for plaintiff.

As Sgt. Ferguson waited, he spoke with neighbors in an attempt to get information leading towards contacting plaintiff's family. P/O's Garczynski and Mattiacci reported that plaintiff was still naked, unresponsive to their presence and their requests she get out of the bathtub. Sgt. Ferguson directed that the female officers get plaintiff out of the tub, get her dressed and bring her outside.

P/O's Casey, Garczynski and Mattiacci returned to plaintiff's bathroom. They turned off the water. P/O Garczynski went to another room to get plaintiff's clothes while Casey and Mattiacci helped plaintiff out of the bathtub. They gave plaintiff her clothes and she dressed herself. They brought plaintiff out of her home and placed her inside of a police wagon.

Plaintiff was taken to Mercy Hospital where P/O Warden executed papers for plaintiff's commit pursuant to section 302 of the Mental Health Act.

**II.    WITNESSES**

    **A.    Liability**

        1.    Sergeant Gary Ferguson #446
             Philadelphia Police Department
             12th District

        2.    Police Officer Wardie Murden #6212
             Philadelphia Police Department
             12th District

       3.       Police Officer Michele Casey #9591
            Philadelphia Police Department
            12th District

       4.       Police Officer Susan Garczynski #3714
            Philadelphia Police Department
            12th District

       5.       Police Officer Howard Lee #6765
            Philadelphia Police Department
            12th District

       6.       Police Officer Deborah Mattiacci #5777
            Philadelphia Police Department
            12th District

       7.       Police Officer Bianca Cole #6150
            Philadelphia Police Department
            12th District

       8.       Records Custodian
            Philadelphia Police Department
            Radio Room

       9.       Plaintiff

      10.     Luther Lewis

## III.    EXHIBITS

DEF-1      Police Form 75-48 for D.C. 00.12.53249

DEF-2      Patrol Log – Murden

DEF-3      Patrol Log – Casey

DEF-4      Patrol Log – Garczynski/Mattiacci

DEF-5      Computer Aided Dispatch for D.C. 00.12.53249

DEF-6      Philadelphia Police Department Directive 136 – Severely Mentally Disabled Persons

DEF-7      Audio tape recording of plaintiff's deposition

DEF-8            Deposition Transcript – Plaintiff

DEF-9            Deposition Transcript – Luther Lewis

DEF-10           Defendant's Interrogatories to Plaintiff and the responses

DEF-11           Citizens Complaint / Report by Luther Lewis

DEF-12           Transcript of testimony before Police Advisory Commission – Luther Lewis

DEF-13           Photographs
        a.    6400 block of Glenwood Avenue, north to south
        b.    6400 block of Glenwood Avenue, south to north
        c.    6407 Glenwood Avenue
        d.    6403 Glenwood Avenue
        e.    6405 Glenwood Avenue
        f.    6405 Glenwood Avenue
        g.    6405 Glenwood Avenue
        h.    6405 Glenwood Avenue

DEF-14           Plaintiff's medical records, Mercy Hospital, 7/13/00 admission

## IV.    TIME FOR TRIAL

No more than four (4) days.

## V.    SPECIAL MATTERS

    A.    PURDON'S PENNSYLVANIA STATUTES AND CONSOLIDATED STATUTES ANNOTATED
PURDON'S PENNSYLVANIA STATUTES ANNOTATED
TITLE 50. MENTAL HEALTH
CHAPTER 15. MENTAL HEALTH PROCEDURES
ARTICLE III. INVOLUNTARY EXAMINATION AND TREATMENT

§ 7302. Involuntary emergency examination and treatment authorized by a physician--not to exceed one hundred twenty hours

 **(a) Application for Examination.**--Emergency examination may be undertaken at a treatment facility upon the certification of a physician stating the need for such examination;  or upon a warrant issued by the county administrator authorizing such examination;  or without a warrant upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination.

  (1) Warrant for Emergency Examination.--Upon written application by a  physician or other responsible party setting forth facts constituting reasonable grounds to believe a person is

severely mentally disabled and in need of immediate treatment, the county administrator may issue a warrant requiring a person authorized by him, or any peace officer, to take such person to the facility specified in the warrant.

(2) Emergency Examination Without a Warrant.--Upon personal observation of the conduct of a person constituting reasonable grounds to believe that he is severely mentally disabled and in need of immediate treatment, and physician or peace officer, or anyone authorized by the county administrator may take such person to an approved facility for an emergency examination. Upon arrival, he shall make a written statement setting forth the grounds for believing the person to be in need of such examination.

**(b) Examination and Determination of Need for Emergency Treatment.**--A person taken to a facility shall be examined by a physician within two hours of arrival in order to determine if the person is severely mentally disabled within the meaning of section 301 and in need of immediate treatment. If it is determined that the person is severely mentally disabled and in need of emergency treatment, treatment shall be begun immediately. If the physician does not so find, or if at any time it appears there is no longer a need for immediate treatment, the person shall be discharged and returned to such place as he may reasonably direct. The physician shall make a record of the examination and his findings. In no event shall a person be accepted for involuntary emergency treatment if a previous application was granted for such treatment and the new application is not based on behavior occurring after the earlier application.

    B.    Other special matters, if any, submissions by separate documents.

**CITY OF PHILADELPHIA - LAW DEPARTMENT**
**NELSON A. DIAZ**
**City Solicitor**

By: _____
**EDWARD D. CHEW, JR.**
Senior Attorney
1515 Arch Street - 14th Floor
Philadelphia, PA 19102-1595
(215) 683-5420
*fax* (215) 683-5397
*e-mail* edward.chew@phila.gov

Attorney for the Municipal Defendant(s)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANN BRIT JOHANSSON** | : | **CIVIL ACTION** |
| v. | : | NO.   02-CV-4684 |
| **CITY OF PHILADELPHIA** | : | |

**CERTIFICATE OF SERVICE**

I, **EDWARD D. CHEW, JR.,** Deputy City Solicitor, hereby certify that on the date below listed, a true and correct copy of the attached pleading was served on the following electronic filing.

Nancy D. Wasser, Esquire
1617 John F. Kennedy Boulevard
Suite 1130
Philadelphia, PA 19103-1811
215.864.9333 *fax* 215.864.0188

**DATE:  September 26, 2003**

**CITY OF PHILADELPHIA - LAW DEPARTMENT**
**NELSON A. DIAZ**
**City Solicitor**

By: _____
**EDWARD D. CHEW, JR.**
Senior Attorney
1515 Arch Street - 14th Floor
Philadelphia, PA 19102-1595
(215) 683-5420
*fax* (215) 683-5397
*e-mail* edward.chew@phila.gov

Attorney for the Municipal Defendant(s)