IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANN BRITT JOHANSSON

    v.            CIVIL ACTION

CITY OF PHILADELPHIA
   and             NO. 02-4684
POLICE OFFICER JOHN DOE

**PLAINTIFF'S PRETRIAL MEMORANDUM**

I. **FACTS**

On July 13, 2000, at about 4:30 p.m. police radio received several calls variously indicating that a twelve (12) to thirteen (13) year old boy or a light complected black female wearing a sweat suit was walking on the roof in the 6400 block of Glenmore Avenue in Southwest Philadelphia. Police Officer Wardie Murden was the first to respond and when he arrived he observed plaintiff on the roof; when he called out to her she went into 6405 Glenmore through a second floor window. Officer Murden correctly assumed it was the plaintiff's home. After plaintiff had gone into her bathroom, other police arrived. While plaintiff was naked and taking a bath, Officer Murden and another male police officer entered plaintiff's house by climbing in a window. The police officers passed by and saw plaintiff in her bathtub but the officers went downstairs and helped their Sergeant drill, remove, and unscrew the lock securing the front door. Three (3) other police officers then entered plaintiff's home and a total of five (5) police officers (including three (3) male officers)

entered plaintiff's tiny bathroom and stood, a couple of feet away, watching her take a bath.  When plaintiff did not immediately answer a male officer's question, two (2) female officers grabbed plaintiff by her arms and pulled her, naked and wet, from the bathtub.  After plaintiff got dressed she was taken downstairs by the police and handcuffed by the female police officers.  According to Officer Murden "We always handcuff people that we 302".  Plaintiff was then taken to Mercy Hospital where Officer Murden simply filled out and signed paperwork involuntarily committing plaintiff under §302 of Pennsylvania's Mental Health Act; he did not see or speak with any doctor.  Plaintiff remained involuntarily committed for five (5) days until given a due process hearing, her first opportunity to be heard, after which she was released.

Prior to being handcuffed by the police, Officer Murden had not told any other police officer anything that he had observed.  None of the other officers saw plaintiff on the flat roof of her home.  The only conduct any of the officers observed was plaintiff sitting naked taking a bath.

On July 13, 2000, when Officer Murden prepared an incident report he stated only that "an unknown B/F was observed by police walking on the roof, she was brought down and transported to Mercy Crisis Center for §302 by police".  Officer Murder was never contacted or interviewed by the Internal Affairs Division, the Police Advisory Commission or any other investigative agency despite the fact that plaintiff's husband immediately filed a citizen's complaint after this July 2000 incident.

Prior to July 13, 2000, Officer Murden did not know or know of plaintiff and had never been to her home.  Prior to (or after) July 13, 2000, Officer Murden had never signed §302 involuntarily commitment papers.  Prior to July 13, 2000, he had never read any police directive regarding how to handle people who were mentally disabled or disturbed.  While at the Police Academy for training in 1993, Officer Murden was told it was standard police procedure to handcuff a person you were going to involuntarily commit.

Prior to leaving plaintiff's home, police rummaged through the mail and searched the house for identification.[1]  While police claimed to have found no identifying information for plaintiff, several neighbors spoke with the police after they emerged, told them who plaintiff was and that she was fine.[2]  When she was involuntarily committed on Officer Murden's say-so, plaintiff was admitted as a Jane Doe, but when asked by hospital to sign a form, she immediately signed her own name.

No commitment papers filled in by and signed by Officer Murden have ever been produced.  There is no record of what facts Officer Murden offered to support the involuntary five (5) days commitment.  None of the seven (7) police officers on the scene were ever interviewed from July 13, 2000 until the Spring of 2003, when they were interviewed en masse by the City's lawyers.  None of the seven (7) police officers was ever disciplined or written up for their actions on

---

[1] All of the preceding paragraphs and recitation is based on facts of record, specifically the transcripts of Officer Murden's deposition and police radio logs.
[2] According to these neighbors, plaintiff was fully clothed when on the roof.  No neighbors told police that plaintiff had mental health problems.

July 13, 2000.  None of the seven police officers ever gave a statement or swore to any facts.

Prior to the unlawful entry into her home, plaintiff had not committed a crime, police had no probable cause to believe she had committed a crime, there was no search warrant authorizing police to enter plaintiff's home and no exigent circumstances justifying the breaking and entering of her home and seizure of plaintiff.  When plaintiff's husband arrived home to find her missing, he called the police several times but they claimed they had no record of any calls or persons at 6405 Glenmore.

II.     **DAMAGES**

Plaintiff, who is now     years old, was involuntarily committed for five (5) days and the medical expenses total $6,691.94 for which she has been billed.

While plaintiff admittedly has a history of mental health problems dating back to 1995 when she was pregnant, the police had no knowledge of this nor did they have reason to believe she was subject to an emergency commitment without a warrant.  Prior to July 13, 2000, plaintiff went outside freely.  Now she rarely goes outside and is very fearful, particularly of having her privacy invaded as it was on July 13, 2000.  Her damages include the time from the point she was taken from her bathtub until July 18, 2000 in addition to the degradation and shredding of her dignity.

III.    **WITNESSES**

    A.     Plaintiff

    B.     Luther Lewis

    C.    Lauboria Robinson

    D.    April Jacobs

    E.    Sylvia Smith

    F.    Roy Hands

    G.    Frank Ebinger

    H.    Police Officer Wardie Murden

## IV.   PLAINTIFF'S EXHIBITS

1. 75-48 7/13/00 Police Incident Report
2. 3/94 Probation Performance Report-Officer Murden
3. 4/00 Performance Report-Officer Murden
4. Police Department Directive 136
5. Mercy Hospital Charges (7/13/00-7/18/00
6. Mental Health Discharge Order
7. Police Radio Calls to 6400 Glenmore 7/13/00
8. 5/8/03 Deposition Transcript of Police Officer Wardie Murden

## V.   Time for Trial

2-3 days

Respectfully submitted,

_____
NANCY D. WASSER
Attorney for Plaintiff
1617 JFK Boulevard
Suite 1130
Philadelphia, PA  19103
(215) 864-9333